## George Medina

v.

## Sheri L. Hegerberg

Record No. 920640

February 26, 1993

Present: All the Justices

*Deborah A. Vitale (Miller & Vitale, on briefs), for appellant.*
*Michael L. Zimmerman (Brault, Palmer, Grove, Zimmerman, White & Mims, on brief), for appellee.*

JUSTICE WHITING delivered the opinion of the Court.

In a plaintiff's appeal of an adverse judgment in an automobile collision case, the dispositive issue is whether the trial court erred in granting a jury instruction tendered by the defendant.

In stop-and-go rush hour traffic in the early evening of January 4, 1989, while driving about 20 miles an hour in one of the center lanes of four-lane Interstate Route 395, Sheri L. Hegerberg was attempting to merge into the lane immediately to her right. In doing so, Hegerberg's vehicle collided with the rear of George Medina's stopped vehicle.

Alleging that Hegerberg had failed to keep a proper lookout for vehicles in front of her, Medina sued Hegerberg, seeking to recover for his resulting property damage and personal injuries. In a jury trial, Hegerberg testified that

> I turned on my turn signal, checked my rearview mirror to see if there was any traffic in that third lane so I could get over and just double-checked, turned my head over just to make sure there's nothing in my way, and that's when I caught . . . the taillights of Mr. Medina's car had gone on and that's when I slammed on my brakes and rear ended Mr. Medina.

At Hegerberg's request, and over Medina's objection, the trial court gave the jury the following instruction.

> The duty to exercise ordinary care to keep a proper lookout, referred to in another instruction of the Court, is not limited to looking forward, but requires the operator of a motor vehicle to exercise ordinary care to look in any direction for vehicles, persons and conditions which should affect her driving.

> And if you believe from the evidence that the defendant momentarily looked into her rear view mirror immediately prior to the collision and that in so doing she acted as a reasonably prudent person would have done under the circumstances, then she was not guilty of negligence in not looking ahead for the period reasonably necessary to look into the said mirror.

The jury returned a verdict for Hegerberg, and the trial court entered judgment on that verdict. Medina appeals.

Hegerberg correctly notes that her instruction virtually copied a similar instruction that was approved in *Russell v. Hammond*, 200 Va. 600, 605, 106 S.E.2d 626, 630-31 (1959). In *Russell*, the defendant motorist struck a pedestrian on the highway just after glancing in his rear view mirror to see whether he could change lanes.

However, the only objection in *Russell* was that the instruction "attempt[ed] to explain away the negligence that the Defendant committed in failing to see the Plaintiff's decedent along the well-lighted roadway." And we simply responded to that objection by holding that the instruction correctly stated the law. *Id.* at 605, 106 S.E.2d at 631.

Unlike *Russell*, in which the plaintiff failed to note the impropriety of including the second paragraph in the instruction, Medina argues here that the second paragraph "takes account of only a select portion of the evidence. The [i]nstruction plucks from a series of continuous and sequential acts a single act, namely, the act of looking in the rear view mirror." Thus, Medina raises the issue of the propriety of commenting on a select portion of the evidence dealing with a contested fact.

■ Hegerberg argues that the instruction was proper because "there was evidence to support the instruction." However,

> when, as here, the evidence relevant to the determination of a factual issue essential to the disposition of the dispute is in conflict, trial courts should not grant instructions that appear to place a judicial imprimatur on selective evidence. "We have repeatedly held that it is reversible error for a trial judge to single out for emphasis a part of the evidence tending to establish a particular fact." *Woods v. Commonwealth*, 171 Va. 543, 547-48, 199 S.E. 465, 467 (1938).

*Nelms v. Nelms*, 236 Va. 281, 286, 374 S.E.2d 4, 7 (1988). And here, there was an issue whether Hegerberg exercised reasonable care to keep a proper lookout, not only for traffic to the rear of her car, but also for traffic stopped in front of her. We conclude that the second paragraph of the instruction did ''appear to place a judicial imprimatur on selective evidence,'' and that it was reversible error to grant the instruction in that form.

In light of this holding, we address only one of the other issues raised by Medina, because it may arise upon remand. At trial, Hegerberg testified to a conversation she had with Medina after the traffic hearing on the case. Hegerberg asked Medina whether his car had been repaired. Hegerberg testified that Medina told her that the insurance company had not agreed to have the car repaired ''the way I want it to be fixed,'' and that ''[i]f they don't start doing something, I'll start complaining of this pain in my back.''

Medina unsuccessfully objected to this evidence before the trial and at trial. Medina argues that it is reversible error to introduce any mention of insurance into a case unless the insurer waives that preclusion. *Willard v. Aetna*, 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973).

■ Generally, any comment deliberately made to inform the jury that a defendant is insured against an accident constitutes reversible error. *Speet v. Bacaj*, 237 Va. 290, 293, 377 S.E.2d 397, 399 (1989). The policy underlying this rule is to insure that a jury does not award damages unrelated to any finding of fault because it is aware that insurance coverage exists and that the insurer, rather than the named defendant, would pay the damages award. *Id.* at 294-95, 377 S.E.2d at 399; *Willard*, 213 Va. at 483, 193 S.E.2d at 778. The mention of insurance constitutes reversible error requiring a new trial when the comment probably has misled or prejudiced the jury. *Rinehart & Dennis Co. v. Brown*, 137 Va. 670, 675, 120 S.E. 269, 271 (1923).

■ Nevertheless, this rule is not absolute. *Simmons v. Boyd*, 199 Va. 806, 812-13, 102 S.E.2d 292, 296-97 (1958). For example, when the insurer is the named defendant in a direct action authorized by the insurance policy, the insurer has waived any claim of prejudice. *Willard*, 213 Va. at 483, 193 S.E.2d at 778. Likewise, when sufficient cautionary instructions are made by the court following a mention of insurance, we generally will not hold comments regarding insurance coverage to be reversible error. *Rinehart & Dennis Co.*, 137 Va. at 676, 120 S.E. at 271. And, mention of

insurance may not be reversible error "where there is an otherwise fair trial and substantial justice is done." *Willard*, 213 Va. at 483, 193 S.E.2d at 778.

With these principles in mind, we consider the allegedly improper statement in this case. The conversation disclosing the fact of insurance coverage was introduced by Hegerberg, not by Medina. Hegerberg, therefore, waived any prejudice she might have suffered as a result of the jury's knowledge that she had insurance coverage. And the conversation deals with an important issue before the jury; namely, whether Medina's alleged back pains were caused by the collision.

Medina claims, however, there is plain and substantial prejudice to him because "the jury may have accepted [Hegerberg's]version ·of the alleged conversation [and decided] that [Medina] had manufactured his injuries." We agree, but that fact alone does not make the evidence inadmissible.

■ Medina's claim of prejudice does not arise from an improper consideration of the fact that Hegerberg was insured; instead, it arises from the inference of a claim of manufactured injuries that may be drawn from Medina's statement, if indeed he made that statement. And Medina was free to attack this evidence by cross-examination, by introduction of evidence to the contrary, or by an explanation of the statement, if he made it.* For the reasons stated, we conclude that the evidence was admissible.

Therefore, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE LACY, concurring in the result.

I concur with the result reached by the majority but believe the jury instruction in question was improperly given because it was not supported by the evidence.

The evidence is undisputed and clearly establishes that Hegerberg looked into her rear view mirror, then turned her head to the right prior to the collision. I agree with Medina's argument that this sequence of events does not support a jury instruction that states

---

* The record does not disclose how Medina dealt with the evidence beyond objecting to it.

that the driver looked into a rear view mirror "immediately prior to the collision."

Hegerberg relies on *Umberger* v. *Koop*, 194 Va. 123, 72 S.E.2d 370 (1952), to support a more expansive interpretation of the word "immediately." In *Umberger*, the Court observed that the word "immediately" was not precise and did not "necessarily import the exclusion of all interval of time or space." *Id.* at 130, 72 S.E.2d at 375. Hegerberg concludes that the phrase "immediately prior to the collision" does not require that the act of looking in the rear view mirror and the collision be in direct sequence, and this Court could hold that Hegerberg "looked into her rear view mirror immediately prior to the collision even though she looked to her right after looking in the mirror."

The *Umberger* Court, however, went on to say that the meaning of a word was to be "determined by the context in which it was used and the purpose for which the statutes were enacted." *Id.* As noted by the majority, the instruction at issue in this case was taken verbatim from the instruction we approved in *Russell* v. *Hammond*, 200 Va. 600, 605, 106 S.E.2d 626, 630-31 (1959). Following the admonition of *Umberger*, a review of the circumstances of *Russell* shows that the instruction there was appropriate and directly reflected the evidence. In *Russell*, uncontroverted evidence established that the motorist, intending to move from the right lane to the left lane of traffic, "looked momentarily into the rear view mirror . . . and as he cast his eyes back down to the road his car struck" and killed a pedestrian. *Id.* at 602, 106 S.E.2d at 628. The motorist's *only* defense for failing to see the pedestrian was that he was looking in his rear view mirror at a vehicle which was overtaking him. The facts of the *Russell* case clearly coincided with the specific language of the instruction, a direct sequential relationship between the collision and the act of looking at the rear view mirror.

Furthermore, the general rule of construction that words should be given their usual and customary meaning is equally applicable to words used in jury instructions. "Immediately" is defined as "without intermediary: in direct connection or relation. . . ." *Webster's Third New International Dictionary* 1129 (1981). This is the generally understood meaning of the word, and should be applied to this instruction.

Accordingly, I conclude that the evidence in this case was insufficient to support giving defendant's instruction A and would reverse the judgment of the trial court on that basis.

JUSTICE COMPTON, dissenting in part.

In my opinion, the trial court did not err in granting the instruction in question.

A party is entitled to an instruction based upon her theory of the case when that theory is supported by the evidence. In this case, a review of the defendant's whole testimony convinces me that she was entitled to have the jury told, in the language used in the instruction, that if it believed from the evidence that the defendant momentarily looked into her rear view mirror and that in so doing she acted reasonably under the circumstances, then she was not negligent in not looking ahead for the period reasonably necessary to look into the mirror.

I reject the majority's characterization of the instruction, which is not a finding instruction, as placing "a judicial imprimatur on selective evidence." In effect, this is an argument that any instruction that mentions evidence in any way to support a party's theory of the case renders an instruction erroneous. I cannot subscribe to such a view.

Accordingly, I would affirm the judgment of the trial court.