COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McClanahan and Haley
Argued at Chesapeake, Virginia


ALAN RASHAD GHOLSTON

MEMORANDUM OPINION* BY
v.        Record No. 1274-09-1         JUDGE JAMES W. HALEY, JR.
                                        MAY 18, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Melinda R. Glaubke (Slipow, Robusto & Kellam, P.C., on briefs),
for appellant.

Richard B. Smith, Special Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


I.  INTRODUCTION

Appealing his conviction for possession of a firearm while possessing with intent to

distribute more than one pound of marijuana in violation of Code § 18.2-308.4, Alan Rashad

Gholston argues the trial court erred in (1) finding the police had probable cause to arrest him

and, therefore, denying his motion to suppress evidence obtained as a result of the arrest;

(2) holding the evidence was sufficient to prove he possessed a firearm; and (3) determining the

evidence was sufficient to show he possessed more than a pound of marijuana with intent to

distribute it.  We affirm.

II.  BACKGROUND

On June 28, 2006, Detective Nicholas Russo, II, of the Virginia Beach Police

Department, received information from a confidential informant that Gholston engaged in

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

marijuana distribution. The informant stated he had purchased marijuana from Gholston. Although the informant had not previously worked with the police, Russo tested his knowledge by asking him questions about Gholston. Based on prior dealings with Gholston, Russo found the informant's information accurate.

Russo directed the informant to contact Gholston by telephone to arrange for a marijuana purchase. Gholston agreed to sell the informant a quarter pound of marijuana at a restaurant to occur shortly after the conversation. Russo listened to this conversation as it happened. He then directed two other detectives to go to Gholston's residence to conduct surveillance. They observed Gholston leave in a car and followed him until near the time he reached the restaurant.

Gholston arrived at the restaurant as expected. He drove around the parking lot several times before coming to a stop. At this same time, Russo was in a car with the informant. Russo drove past Gholston as Gholston circled around the lot. This enabled Russo to positively identify the driver as Gholston and allowed the informant to identify Gholston as a marijuana supplier. As soon as Gholston stopped, the police arrested him. Gholston was the only occupant of the car.

After the arrest, the police discovered marijuana and a handgun. Behind the passenger seat, the police discovered a package containing the quarter pound of marijuana the informant had arranged to purchase and a separate package of marijuana weighing 43.34 ounces. They also found a small amount of marijuana in Gholston's pocket. A handgun was located under the driver's seat of the car. When the police informed Gholston they had found the handgun, he stated: "F***, I just wanted to get that gun home." Gholston repeated the expletive several times. In a subsequent formal interview, Gholston advised the police "that the handgun was someone else's and that he was going to bring it back to that person."

Gholston filed a motion to suppress the evidence obtained from his arrest on the ground that the police lacked probable cause to arrest him and, therefore, violated his Fourth Amendment rights. After a hearing, the trial court denied the motion, finding: "I don't know how much more you can ask for when you're setting up a drug buy."[1]

A grand jury indicted Gholston for possessing a firearm while possessing with intent to distribute more than one pound of marijuana. A jury trial was held on March 10, 2009. The relevant evidence for the Commonwealth is summarized above.

Gholston's father testified concerning the handgun found under the seat. He stated he owned the gun and had placed it there the day Gholston was arrested. He testified he regularly took the gun in the car to go shooting at a range and placed it under the driver's seat to conceal it. He forgot to remove the gun on the day in question. When Gholston's father learned Gholston had borrowed the car with the gun remaining in it, he called Gholston, informed him of the gun's presence, and requested him to return with the gun.

---

[1] At the suppression hearing, Russo testified about a prior encounter with Gholston involving a different confidential informant (identified as informant 55, whereas the informant from June 28 was informant 79). The informant identified Gholston as a marijuana supplier and arranged to purchase a pound of marijuana from him. However, Russo instructed the informant not to complete the transaction because Russo wished to conduct surveillance of Gholston.

On cross-examination, Russo was unable to answer some questions concerning surveillance conducted at Gholston's residence. Defense counsel objected that "the proper witnesses [are not] here to conduct a full hearing." In response, the Commonwealth asserted the evidence from the date of the arrest could stand alone to provide probable cause for the arrest. The court accepted this limitation. The court questioned: "But on June 28th -- Your argument would be that June 28th stands alone for probable cause?" The Commonwealth responded: "True." Later, the court explained to defense counsel that "the Commonwealth's position is that they don't care if nothing happened before [June] 28th, that . . . there's enough on [June] 28th standing alone to support probable cause for the arrest on that date." Defense counsel then stated he would "move on to the 28th."

As parties may concede facts, Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*), we consider evidence about events prior to June 28 only as foundational.

Gholston also testified. He admitted he received a phone call from the informant asking to purchase a quarter pound of marijuana and agreed to meet at a restaurant to conduct the transaction. Gholston further admitted he had the other 43.34 ounces of marijuana in the car, but denied intending to sell it. Rather, Gholston stated he obtained this marijuana from the informant as collateral for a debt and intended to return it upon repayment. Gholston also testified concerning the gun. While driving to the location, he received a phone call from his father informing him about the gun's presence. Gholston testified he never saw the firearm before his arrest and did not even know of its location within the car.

At the conclusion of the evidence, Gholston moved to strike on the grounds that the Commonwealth had failed to prove his possession of the firearm and his intent to distribute the 43.34 ounces of marijuana. In considering the motion, the court engaged defense counsel in a discussion about whether Gholston's stated intent to return the marijuana to the informant after repayment of a debt constituted an intent to distribute. At the conclusion of the dialogue, the following exchange occurred:

> THE COURT: All right. So whatever the transaction was in the process of transferring the marijuana from [the informant] to him and him back to [the informant], is that not under the definition of distribution of Virginia distribution?
>
> [DEFENSE COUNSEL]: Yes, sir. It would fall within that.
>
> THE COURT: All right. Okay.

The court denied the motion to strike. The jury found Gholston guilty, and he now appeals.

III.  ANALYSIS

A.  <u>Probable Cause to Arrest</u>

Gholston first argues the trial court erred in denying his motion to suppress.  He maintains the police lacked probable cause to arrest him and, therefore, all evidence flowing from the arrest should have been suppressed.

In considering a trial court's denial of a suppression motion, we defer to the facts found by the trial court, but consider *de novo* whether the facts gave the police probable cause. <u>Buhrman v. Commonwealth</u>, 275 Va. 501, 504-05, 659 S.E.2d 325, 327 (2008).  Gholston bears the burden of demonstrating reversible error when viewing the evidence "in the light most favorable to the Commonwealth."  <u>McCain v. Commonwealth</u>, 275 Va. 546, 552, 659 S.E.2d 512, 515 (2008).

Police officers may arrest without a warrant where they have probable cause of criminal conduct.  <u>White v. Commonwealth</u>, 267 Va. 96, 104, 591 S.E.2d 662, 666 (2004).  In considering probable cause, our Supreme Court has stated:

> "The legal standard of probable cause, as the term suggests, relates to probabilities that are based upon the factual and practical considerations in everyday life as perceived by reasonable and prudent persons.  The presence or absence of probable cause is not to be examined from the perspective of a legal technician.  Rather, probable cause exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed."

<u>Parker v. Commonwealth</u>, 255 Va. 96, 106, 496 S.E.2d 47, 53 (1998) (quoting <u>Taylor v. Commonwealth</u>, 222 Va. 816, 820, 284 S.E.2d 833, 836 (1981)).  We employ "an objective test based on a reasonable and trained police officer's view of the totality of the circumstances." <u>Brown v. Commonwealth</u>, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005).

- 5 -

Police officers may make arrests based upon information from informants as long as they reasonably believe the informant has provided accurate information.  McGuire v. Commonwealth, 31 Va. App. 584, 594-95, 525 S.E.2d 43, 48 (2000).  In evaluating whether a confidential informant has provided the police with sufficient information to give probable cause for an arrest, we especially consider two factors:  "(1) the veracity or reliability of the informant and (2) the informant's basis of knowledge."  Byrd v. Commonwealth, 50 Va. App. 542, 551, 651 S.E.2d 414, 419 (2007); see also Askew v. Commonwealth, 38 Va. App. 718, 723, 568 S.E.2d 403, 406 (2002).  These factors do not constitute separate and necessary parts of a probable cause determination, but rather fit into the general totality of the circumstances analysis.  Boyd v. Commonwealth, 12 Va. App. 179, 187, 402 S.E.2d 914, 919 (1991).  If an informant's information lacks in one area, a substantial demonstration of reliability in other areas may compensate for the deficiency.  Polston v. Commonwealth, 24 Va. App. 738, 744-45, 485 S.E.2d 632, 635 (1997).

Accurate predictions about future events may enhance an informant's credibility.  Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008).  In Illinois v. Gates, 462 U.S. 213, 245 (1983), the United States Supreme Court found significant that a tip to police provided "a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted."  The Court noted that where "an informant is right about some things, he is more probably right about other facts."  Id. at 244 (internal quotation marks omitted).

A classic example of finding probable cause for an arrest from an informant's predictive information comes in Draper v. United States, 358 U.S. 307 (1959).  The informant told a federal agent that the defendant would depart from a train on one of two days with heroin.  Id. at 309.  The informant further provided a meticulous physical description of the defendant and of his

clothing and stated the defendant would carry a bag and typically walked quickly. Id. The informant had also provided information for about six months, and the information had always been accurate. Id. Two officers arrested the defendant after finding the circumstances as described by the informant. Id. at 310. In finding probable cause existed, the Court held that "with every other bit of [the informant's] information being thus personally verified, [the officers had probable cause] to believe that the remaining unverified bit of [the informant's] information -- that Draper would have heroin with him -- was likewise true." Id. at 313.

This Court recently evaluated whether police had probable cause for an arrest based on information from a confidential informant on facts relevant to this case in Robinson v. Commonwealth, 53 Va. App. 732, 675 S.E.2d 206 (2009). The informant had given information leading to eight arrests, but had worked with police for less than two months. Id. at 735, 675 S.E.2d at 208. The informant stated a black female (the defendant) would go to a specific gas station that night to sell cocaine. Id. The informant also included the make, model, and license plate number of the car the defendant would drive. Id. Lastly, the informant stated he had witnessed the defendant possess cocaine that evening. Id. When observing the gas station that night, the police witnessed the defendant drive into the station in a car with the same make, model, and license plate number identified by the informant. Id. at 736, 675 S.E.2d at 208. The defendant parked by a gas pump, exited the vehicle, and went into the station convenience store. Id. The defendant met a person inside, and they briefly went to the back of the store. Id. The defendant then left the store and returned to her car. Id. at 736, 675 S.E.2d at 208-09. The other person followed out of the store soon thereafter, walking about ten feet past the defendant's car before returning to the car and placing a hand inside the driver's side window. Id. at 736, 675 S.E.2d at 209. The defendant then drove away without pumping any gas, despite parking the car near a pump. Id. The police arrested the defendant on these facts and discovered cocaine. Id. at

736-37, 675 S.E.2d at 209. This Court held probable cause existed for an arrest. We noted that in addition to claiming to personally see the defendant possess drugs, the informant had supplied police with detailed information concerning the defendant's identity and future actions. Id. at 739-40, 675 S.E.2d at 210. Although the police did not actually witness a drug transaction, we stated this was only one factor in the totality of the circumstances inquiry. Id. at 740, 675 S.E.2d at 210. When the information from the informant was combined with the observations of the police, probable cause arose. Id. at 742, 675 S.E.2d at 211.

Likewise, we hold in this case that the police possessed probable cause to arrest Gholston when he arrived at the parking lot to sell marijuana. The informant advised Detective Russo he had previously purchased marijuana from Gholston, thus placing Gholston in possession of contraband. See id. at 739, 675 S.E.2d at 210. Detective Russo had tested the informant's knowledge about Gholston by asking him questions Russo knew the answers to from prior dealings with Gholston. Russo found the answers accurate. Russo then had the informant place a phone call to a person the informant identified as Gholston. Russo listened to the entire conversation. During this exchange, Gholston agreed to sell the informant a quarter pound of marijuana in the parking lot of a restaurant. Two other detectives observed Gholston leave his residence in a car and followed him until he neared the restaurant. Gholston entered the restaurant parking lot. Thereafter, Russo drove past Gholston's car and observed Gholston within it. As Russo testified: "I knew it to be Alan Gholston." The informant also identified Gholston. While the informant had not previously had dealings with the police, this represented only one factor in the totality of the circumstances inquiry in assessing probable cause. Polston, 24 Va. App. at 744, 485 S.E.2d at 635. Given the circumstances of the informant's identification of Gholston as a marijuana distributor, the phone call overheard by the police with a person the informant identified as Gholston arranging for a marijuana purchase at a restaurant parking lot,

and Gholston's anticipated arrival at the parking lot, the evidence clearly provided probable cause that Gholston possessed and intended to distribute marijuana.  See Draper, 358 U.S. at 313; Robinson, 53 Va. App. at 742, 675 S.E.2d at 211.

### B.  Possession of a Firearm

Gholston next contends the prosecution failed to prove he possessed the firearm found under his seat.  He argues that while he knew of the presence of the firearm in the car from his father's phone call telling him of it, no evidence demonstrated he knew its location and without such knowledge he could not have possession of the weapon.

In reviewing a fact finder's decision, we view "the evidence in the light most favorable to the Commonwealth, the prevailing party in the circuit court, and we accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence."  Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008).  The issue is simply "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  We will affirm the trial court unless its judgment "is plainly wrong or without evidentiary support."  Jones v. Commonwealth, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009).

The Commonwealth may prove either actual or constructive possession of a firearm to obtain a conviction.  Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 872 (1998).  To show constructive possession, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control."  Rawls v. Commonwealth, 272 Va. 334, 349, 634 S.E.2d 697, 705 (2006).  A defendant's proximity to a firearm alone does not suffice to prove possession, but the

fact finder may consider it along with other factors. Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). Where the Commonwealth relies on circumstantial evidence to prove constructive possession, we ask only whether the fact finder could reject defense theories and find the defendant guilty beyond a reasonable doubt. Jordan v. Commonwealth, 273 Va. 639, 646, 643 S.E.2d 166, 170 (2007).

We hold the jury here could determine Gholston constructively possessed the firearm found in the car he drove. Gholston admits he knew of the presence of the weapon in the vehicle, but simply claims he did not know of its location. The weapon was found underneath Gholston's seat, and Gholston was the sole occupant of the vehicle. While this does not by itself suffice to prove possession, it does have significant probative value. When Gholston learned the police had discovered the firearm, he remarked: "F***, I just wanted to get that gun home." Gholston repeated the expletive several times. Gholston also told the police he intended to return the firearm to another person. The jury could infer from these statements and Gholston's proximity to the weapon that Gholston had dominion and control over the weapon. Although Gholston testified he did not know of the firearm's location, the jury did not have to accept this testimony. The jury could conclude Gholston sought to conceal his guilt and could regard his explanation as further evidence of his guilt. See Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). Based on these circumstances, a rational fact finder could determine Gholston constructively possessed the firearm found under his seat.

### C. Possession of Over One Pound of Marijuana with Intent to Distribute

Finally, Gholston argues the Commonwealth failed to prove he possessed more than one pound of marijuana with intent to distribute. Gholston contends that while the evidence showed he intended to sell a quarter pound of marijuana and possessed a small amount for personal use, the remaining large quantity found in the car was not for distribution. Rather, Gholston

maintains he held this marijuana as collateral for a debt and intended to return it upon repayment of the debt. We find Gholston conceded this argument in the trial court and, therefore, do not address it.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling." The purpose of this contemporaneous objection rule "is to ensure that the trial court has an opportunity to rule intelligently on a party's objections and avoid unnecessary mistrials or reversals." Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002).

A party preserves an issue for appeal "if a trial court is made aware of a litigant's legal position *and the litigant did not expressly waive such arguments*." Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010) (emphasis added). A concession of law in the trial court may operate as a waiver of an argument under Rule 5A:18. Crawford v. Commonwealth, 55 Va. App. 457, 481, 686 S.E.2d 557, 569 (2009) (*en banc*).

The record reveals Gholston conceded the issue of whether the evidence was sufficient to show his possession of more than one pound of marijuana with intent to distribute in the trial court and we, therefore, do not address it.[2] Gholston testified he had taken the larger quantity of marijuana found in the car from the informant as collateral for a debt the informant owed him. He stated he intended to return the marijuana when the informant paid the debt. Thereafter, Gholston's counsel moved to strike on the ground now raised on appeal. The trial court then engaged defense counsel in a dialogue about whether Gholston returning the marijuana after repayment would constitute distribution, thereby giving Gholston possession with intent to distribute. At the conclusion of this discussion, the trial court asked: "So whatever the transaction was in the process of transferring the marijuana from [the informant] to him and him

---

[2] At oral argument, counsel acknowledged this issue was conceded by trial counsel.

back to [the informant], is that not under the definition of distribution of Virginia distribution?" Gholston's counsel responded: "Yes, sir. It would fall within that." This statement plainly conceded that even under Gholston's theory of the case he possessed more than a pound of marijuana with intent to distribute and operated as a waiver on appeal under Rule 5A:18.

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>